Section 1203 Complaint Information Reported in the Semiannual Reports to the Congress Was Not Always Accurate and Did Not Represent All Complaints

Conclusion

Appendix I – Detailed Objectives, Scope, and Methodology

Appendix II – Major Contributors to This Report

Appendix III – Report Distribution List

Appendix IV – Outcome Measures

Appendix V – Internal Revenue Service Restructuring and Reform Act of 1998 Section 1203 Provisions Requiring Termination of Employment

Appendix VI – Internal Revenue Service Commissioner's Complaint Processing and Analysis Group's Response to the Draft Report

Appendix VII – Treasury Inspector General for Tax Administration Office of Investigations' Response to the Draft Report

## Executive Summary

The Internal Revenue Service (IRS) Restructuring and Reform Act of 1998 (RRA 98) Section (§) 1203 provides the IRS Commissioner with the authority to terminate the employment of IRS employees for certain proven violations committed in connection with the performance of official duties. The IRS Commissioner also has the authority to determine whether mitigating factors exist that weigh against termination. One example of an RRA 98 § 1203 violation is the willful failure to obtain the required approval signatures on documents authorizing the seizure of a taxpayer's property. Employees may appeal the charges of § 1203 misconduct throughout the administrative process. However, once all appeals have been exhausted and the IRS Commissioner makes a final decision that an employee committed one of the § 1203 provisions, the final decision cannot be appealed and the employee is removed from Federal service, as required by the RRA 98. RRA 98 § 1102(a) added Internal Revenue Code § 7803(d)(1)(E) (Supp. IV 1998) to require the Treasury Inspector General for Tax Administration (TIGTA) to annually report to the Congress any termination or mitigation under RRA 98 § 1203.

The objectives of this audit were to determine if RRA 98 § 1203 complaints were properly controlled by the IRS and the TIGTA and if RRA 98 § 1203 complaint information was accurately reported in the TIGTA Semiannual Report to the Congress.

*EXHIBIT E*

# Results

The IRS and the TIGTA Office of Investigations can better ensure that RRA 98 § 1203 complaint information is properly controlled and accurately reported in the TIGTA Semiannual Report to the Congress. In general, complaints referred from one office to another within the TIGTA Office of Investigations, or from one office to another within the IRS, were accounted for and arrived at their final destination. However, at the time of our review, management could not locate 9 of the 173 complaints in our sample, and management information systems did not contain current information for 22 of the 173 complaints in the sample. We also identified 28 allegations outside of our sample where the § 1203 violation code had been removed from the Investigations Management Information System (IMIS) based on the procedures in effect prior to June 2000. This resulted in information being inconsistently reported in the TIGTA Semiannual Report to the Congress. Additionally, we identified two required § 1203 items that were reported incorrectly in a Fiscal Year (FY) 2000 TIGTA Semiannual Report to the Congress and five items not required to be reported that were overstated in two FY 2000 semiannual reports.

## Section 1203 Complaints Could Not Always Be Located and Management Information Was Not Always Current or Consistent

For 31 of the 173 complaints in our sample, either the complaints could not be located from information recorded on the computer databases (9 complaints) or the computer databases did not contain current information about the complaints (22 complaints). We projected our findings to the total population of 1,213 open § 1203 complaints on the IRS and TIGTA databases as of September 30, 2000. According to the projection, casework may not have been completed for an estimated 38 complaints (± 1.93 percent) and the computer databases may not contain current information for another 125 complaints (± 4.23 percent). After we brought these issues to the attention of IRS and TIGTA Office of Investigations management, they began taking corrective actions to locate the 9 complaints and update the computer systems for the 22 complaints.

## Section 1203 Complaint Information Reported in the Semiannual Reports to the Congress Was Not Always Accurate and Did Not Represent All Complaints

We compared § 1203 complaint information reported in the FY 2000 TIGTA Semiannual Reports to the Congress to § 1203 complaint documentation obtained from the IRS Commissioner's Complaint Processing and Analysis Group (CCPAG) and from the TIGTA Complaint Management Division. Two required § 1203 items were reported incorrectly in one FY 2000 Semiannual Report and five items not required to be reported were overstated in two FY 2000 Semiannual Reports.

## Summary of Recommendations

*EXHIBIT E*

We recommend that IRS CCPAG and TIGTA Office of Investigations management locate and complete necessary actions for the remaining RRA 98 § 1203 complaints that could not be located, correct the computer databases for those § 1203 complaints where the information was not current, ensure compliance with existing procedures for processing § 1203 complaints, devise a method to ensure § 1203 complaints can be located in the future, and ensure that § 1203 complaint information is accurately reported in the TIGTA Semiannual Report to the Congress.

Management's Response: IRS CCPAG and TIGTA Office of Investigations management agreed with the observations and recommendations in the report. Both offices took immediate action to resolve the remaining complaints we could not locate and to correct the computer databases where the information was not current. In addition, controls will be strengthened to ensure compliance with existing procedures for processing § 1203 complaints and to ensure that § 1203 complaint information is accurately reported in the TIGTA Semiannual Report to the Congress.

IRS and TIGTA management's complete responses to the draft report are included as Appendices VI and VII, respectively.

## Objectives and Scope

The overall objectives of this audit were to determine if Internal Revenue Service (IRS) Restructuring and Reform Act of 1998 (RRA 98) Section (§) 1203 complaints were properly controlled by the IRS and the Treasury Inspector General for Tax Administration (TIGTA) and if § 1203 complaint information was accurately reported in the TIGTA Semiannual Report to the Congress. Audit work was performed in the IRS Commissioner's Complaint Processing and Analysis Group (CCPAG) and the TIGTA Office of Investigations' Complaint Management Division (CMD). The audit was conducted between December 2000 and April 2001 and was performed in accordance with *Government Auditing Standards*.

To accomplish the objectives, we:

- Interviewed IRS CCPAG and TIGTA CMD personnel to determine how complaints are received, controlled, tracked, and eventually reported in the TIGTA Semiannual Report to the Congress.
- Reviewed a statistically valid sample of 173 open § 1203 complaints from the IRS and the TIGTA Office of Investigations databases as of September 30, 2000, to determine if the complaints were properly controlled.
- Reviewed documentation from the IRS CCPAG and the TIGTA CMD to determine the accuracy of the § 1203 complaint information reported in the TIGTA Semiannual Reports to the Congress for the 6-month periods ending March 31, 2000, and September 30, 2000.

Details of the audit objectives, scope, and methodology are presented in Appendix I. Major contributors to this report are listed in Appendix II.

## Background
### *EXHIBIT E*

On July 22, 1998, the President signed the RRA 98 into law. RRA 98 § 1102(a) added Internal Revenue Code (I.R.C.) § 7803(d)(1)(E) (Supp. IV 1998) to require the TIGTA to annually report to the Congress any termination or mitigation under RRA 98 § 1203. Section 1203 provides the IRS Commissioner with the authority to terminate the employment of IRS employees for certain proven violations committed in connection with the performance of their official duties. The IRS Commissioner also has the authority to determine whether mitigating factors exist that weigh against termination. One example of an RRA 98 § 1203 violation is the willful failure to obtain the required approval signatures on documents authorizing the seizure of a taxpayer's property.

IRS employees and taxpayers may submit § 1203 complaints through e-mail, regular mail, telephone, or fax to any office within the IRS or the TIGTA Office of Investigations. Once received, § 1203 complaints may be investigated by either the IRS or the TIGTA Office of Investigations. In most instances, the TIGTA is given the opportunity to review a § 1203 complaint to decide who should conduct the investigation. The following explains the types of § 1203 complaints investigated by the IRS and the TIGTA.

## Complaints that must be referred to the TIGTA

With the exception of potential Equal Employment Opportunity-related complaints and tax-related issues, the following complaints are referred directly and immediately to the TIGTA Office of Investigations:

- Section 1203 complaints related to all managers, Senior Executive Service, Criminal Investigation, or GS-15 employees.
- Section 1203 complaints related to false statements under oath, falsification of documents, assault or battery, confidentiality and disclosure of return information, or threat of audit.

## Complaints that may be referred to the TIGTA

Based on preliminary investigation by the IRS, complaints related to the remaining § 1203 provisions may be referred to the TIGTA Office of Investigations, as follows:

- Section 1203 complaints related to seizures, constitutional rights, or harassment/retaliation, if IRS management determines that a potential § 1203 violation exists and threshold criteria have been met.
- Section 1203 complaints related to discrimination (civil rights), if IRS management determines that a potential § 1203 violation exists and specific criteria have been met.
- Section 1203 complaints related to late filing or the understatement of tax liability, if IRS management determines that a potential § 1203 violation exists and the facts indicate a potential criminal violation.

***EXHIBIT E***

If the TIGTA Office of Investigations declines to conduct an investigation, the complaint is referred to the IRS through the CCPAG. The IRS Commissioner established the CCPAG to enhance the IRS' responsiveness to employee and taxpayer complaints. In October 1999, the CCPAG began receiving and controlling all § 1203 complaints referred from the TIGTA to the IRS.

## Evaluation of § 1203 Complaints

Once the facts are established through an inquiry or investigation, IRS managers, with the assistance of local labor relations specialists and the staff of the Centralized Adjudication Unit (CAU), evaluate the information to determine if a § 1203 violation has occurred. If there is sufficient evidence to support that a § 1203 violation occurred, the employee is given a letter advising that the IRS proposes to remove him or her from Federal service. The employee has a right to respond to this letter orally or in writing. After the employee responds to the letter, a deciding IRS management official determines if the evidence supports the § 1203 violation charge. This factual determination may be reviewed through arbitration or the employee may appeal the charge of § 1203 misconduct to the Merit Systems Protection Board. If the employee's appeal is not successful and the § 1203 violation remains supported, the case is forwarded to the Commissioner's § 1203 Review Board for evaluation.

The Commissioner's § 1203 Review Board evaluates all cases where there is enough evidence to support the § 1203 violation charge and recommends a disciplinary action (either termination or mitigation) for each case. The Review Board only forwards a § 1203 case to the IRS Commissioner if it determines that the Commissioner should consider mitigation. If the Review Board determines that the Commissioner should not consider mitigation, the case is returned to the deciding IRS management official and the employee is removed from Federal service under the authority of the Commissioner, as required by the RRA 98.

Employees have the same rights to appeal a removal action as they did before the enactment of the RRA 98 and may appeal the charges of § 1203 misconduct throughout the administrative process. However, once the IRS Commissioner makes a final judicial or administrative determination that an employee committed one of the § 1203 provisions, the final decision cannot be appealed and the employee is removed from Federal service, as required by the RRA 98.

During the time period covered by our review, the TIGTA Office of Investigations used the Investigations Management Information System (IMIS) to control and track § 1203 complaints. If a complaint involves allegations against more than one IRS employee, the TIGTA tracks each employee as a separate allegation. The IRS uses two computer systems, the Automated Labor and Employee Relations Tracking System (ALERTS) and the Executive Correspondence Management System (ECMS), to control and track § 1203 complaints.

When the RRA 98 became law on July 22, 1998, the IRS and the TIGTA Office of Investigations began developing procedures for the processing of § 1203 complaints. As with any new process, many procedures changed during the beginning stages as each organization determined the best way to jointly

*EXHIBIT E*

handle these complaints. As a result, the processes and systems for controlling § 1203 complaints evolved as both the IRS and the TIGTA gained experience in implementing the law.

# Results

The IRS and the TIGTA Office of Investigations can better ensure that RRA 98 § 1203 complaint information is properly controlled and accurately reported in the TIGTA Semiannual Report to the Congress. In general, complaints referred from one office to another within the TIGTA Office of Investigations, or from one office to another within the IRS, were accounted for and arrived at their final destination.

However, at the time of our review, management could not locate 9 of the 173 complaints in our sample, and management information systems did not contain current information for 22 of the 173 complaints in the sample. After we brought these issues to the attention of IRS and TIGTA Office of Investigations management, they began taking corrective actions to locate the 9 complaints and update the computer systems for the 22 complaints. We also identified 28 allegations outside of our sample where the § 1203 violation code had been removed from the IMIS based on the procedures in effect prior to June 2000. This resulted in information being inconsistently reported in the TIGTA Semiannual Report to the Congress.

Additionally, we identified two required § 1203 items that were reported incorrectly in a Fiscal Year (FY) 2000 TIGTA Semiannual Report to the Congress and five items not required to be reported that were overstated in two FY 2000 semiannual reports.

## Section 1203 Complaints Could Not Always Be Located and Management Information Was Not Always Current or Consistent

For 31 of the 173 complaints in our sample, either the complaints could not be located from information recorded on the computer databases (9 complaints) or the computer databases did not contain current information about the complaints (22 complaints). We projected our findings to the total population of 1,213 open § 1203 complaints on the IRS and the TIGTA databases as of September 30, 2000. According to the projection, casework may not have been completed for an estimated 38 complaints (± 1.93 percent) and the computer databases may not contain current information for another 125 complaints (± 4.23 percent).

In addition to reviewing the sample of complaints, we analyzed the IMIS and identified 28 allegations where the § 1203 violation code had been removed from the system, which resulted in information being inconsistently reported in the TIGTA Semiannual Report to the Congress.

### Transfers were not properly controlled for nine complaints

*EXHIBIT E*

At the time of our review, neither the IRS nor the TIGTA Office of Investigations could locate 9 of the 173 complaints (5 percent) reviewed. Seven of the nine complaints that could not be located were transferred from the TIGTA Office of Investigations to the IRS. As a result, we could not determine if the IRS had completed its investigation for these complaints.

- Five complaints were referred to the IRS according to the IMIS, but neither the IRS nor the TIGTA Office of Investigations could provide us with a copy of the required transmittal form, Complaint Referral Memorandum - Response Required (Form 2070), during the time of our review.
- One complaint was referred using Form 2070, but the TIGTA Office of Investigations did not have a receipted copy of the Form 2070 to show that the complaint reached its final destination. The TIGTA Office of Investigations had referred the complaint to a former IRS Regional Commissioner's office before the CCPAG was established.
- One complaint was referred using Form 2070 and the TIGTA Office of Investigations had a receipted Form 2070, indicating that the CCPAG received the complaint. However, the complaint was not controlled on the ALERTS, which indicates that the complaint may not have been worked.

The two remaining complaints that could not be located were transferred from the CAU to a field Labor Relations office. However, the field Labor Relations offices had no record of receiving the complaints.

Transmittal forms are generally used to help ensure that management maintains control of the documents as they are transferred from one office to another. Use of a transmittal form generally requires the receiving official to acknowledge receipt of the document by sending a signed copy of the form back to the originator. The TIGTA Office of Investigations requires the use of Form 2070 as a transmittal form when transferring complaints.

IRS management does not require the use of a document transmittal when transferring complaints within the IRS. Instead, a cover letter is attached to the complaint and the computer database is updated to show the complaint was transferred. However, with this method of transfer, there is no follow-up to ensure the employee receives the complaint.

One complicating factor that increases the difficulty of tracking complaints as they are transferred between the IRS and the TIGTA Office of Investigations is the lack of a uniform complaint numbering system to identify complaints in both offices that are recorded on different computer systems. Because the IRS and the TIGTA computer systems were not designed to be integrated with each other, each uses a different numbering system to identify complaints. Without a common field to link the computer systems, complaints that are transferred between the IRS and the TIGTA Office of Investigations cannot be systemically tracked between the two organizations.

If § 1203 complaints are not properly controlled, the administrative action required by law may not be taken by the IRS Commissioner. Uncontrolled complaints could also result in § 1203 information being

**EXHIBIT E**

understated in the TIGTA Semiannual Report to the Congress. Additionally, if all actions are not completed on complaints, employees may not have the opportunity to be proven innocent.

## Computer information was not current for 22 complaints

Information contained on the IRS and the TIGTA computer systems was not current for 22 of the 173 complaints (13 percent) in our sample at the time of our review. Generally, for these 22 complaints, the IMIS, the ALERTS, or the ECMS databases either had not been updated to show the most current work on the case or the information had been entered incorrectly. For example, the IMIS database indicated that ten complaints had been referred to the IRS for action, although the IRS had completed action on the complaints and closed them on its databases. For two other complaints, the IMIS database showed the complaints had been sent to the CMD when they had actually been referred to the IRS for action.

The IRS and the TIGTA Office of Investigations rely on accurate management information to document the location of complaints and to report § 1203 information. Complaints are entered onto computer inventory systems when received, and IRS and TIGTA employees are responsible for updating their respective computer systems whenever complaints are referred from one office to another or when the status of a complaint changes. If information is not updated when the status of a complaint changes (i.e., open, closed, referred), the accuracy of the TIGTA Semiannual Report to the Congress could be affected.

## Computer information was not consistent for 28 allegations

The general § 1203 information reported in the semiannual report relies on accurate § 1203 violation code information. However, a comparison of the September 2000 IMIS data with the March 2000 IMIS data identified 28 allegations that were originally coded as § 1203 violations in March, but were no longer coded as § 1203 violations in September. The TIGTA enters all § 1203 allegations received into the IMIS; however, prior to June 2000, TIGTA employees sometimes removed the § 1203 violation code if the allegation did not meet specific § 1203 criteria. We could not determine when the § 1203 violation code for the 28 allegations had been removed, prior to June 2000 or after.

The TIGTA Office of Investigations added procedures in June 2000 to require the retention of the § 1203 violation code on the IMIS as originally entered. For example, the TIGTA uses the § 1203 violation code to determine the number of allegations received involving potential § 1203 violations. However, if the initial investigation shows the charge of § 1203 misconduct is not supported, the TIGTA does not remove the § 1203 violation code from the IMIS. Instead, the TIGTA continues to show the complaint as an *allegation* of § 1203 misconduct on the IMIS and updates the complaint record with the appropriate closing code to show the allegation was not supported.

Consistent treatment of the § 1203 violation code is important because this code is used in reporting information in the TIGTA Semiannual Report to the Congress. Removing the § 1203 violation code from an allegation on the IMIS reduces the total number of allegations received involving potential § 1203 violations reported in the semiannual report. As a result, information was inconsistently reported

*EXHIBIT E*

in the TIGTA Semiannual Report to the Congress.

## Recommendations

1. IRS CCPAG and TIGTA Office of Investigations management should locate and complete necessary actions for the remaining RRA 98 § 1203 complaints that could not be located and should correct the status for the remaining § 1203 complaints where the information was not current.

   Management's Response: CCPAG and TIGTA Investigations management have either found, or recreated and resolved the remaining complaints that could not be located. They have also updated the remaining complaints where status information was not current.

2. IRS CCPAG and TIGTA Office of Investigations management should develop a process to better control § 1203 complaints. The process should include:

- Using a transmittal form to transfer complaints between the IRS and the TIGTA.
- Acknowledging receipt (via transmittal form) of the complaint by the receiving office (for complaints transferred between the IRS and the TIGTA).
- Following up with the receiving office if receipt of the complaint is not acknowledged (for complaints transferred between the IRS and the TIGTA).
- Following up with the receiving office to ensure the complaint was received (for complaints transferred within the IRS).
- Updating the complaint status on all relevant computer databases when complaints are transferred or closed.
- Exploring the feasibility of capturing a unique complaint number on the IRS and TIGTA databases.

Management's Response: The CCPAG management processes have evolved and they now have an electronic system in place to control the transfer of complaints within the IRS and a manual system to control the transfer of complaints outside the IRS. Both systems provide a verification of receipt, a trail of actions, and a means to follow-up to ensure complaints are not lost. Information is exchanged with the TIGTA Office of Investigations to show actions taken on complaints. Also, the CCPAG decided the use of a common complaint number was not feasible without a common information system.

The TIGTA Office of Investigations has a manual process in place to control the transfer of complaints. Special Agents in Charge (SAC) will be advised, via memorandum, of their responsibilities to verify receipt of any § 1203 complaints forwarded to the IRS. Also, the SACs and the CMD will be advised of the importance of current and accurate information on their management information systems. In addition, a field is available to capture an IRS complaint number, if applicable.

1. TIGTA Office of Investigations management should develop a consistent method for identifying

*EXHIBIT E*

the number of § 1203 allegations received for reporting in the TIGTA Semiannual Report to the Congress.

Management's Response: Notification will be provided to TIGTA Office of Investigations personnel that once a § 1203 complaint is entered into the management information system, the violation code will only be removed if management has determined the code was placed there in error.

## Section 1203 Complaint Information Reported in the Semiannual Reports to the Congress Was Not Always Accurate and Did Not Represent All Complaints

We compared § 1203 complaint information reported in the FY 2000 TIGTA Semiannual Reports to the Congress to § 1203 complaint documentation obtained from the IRS CCPAG and the TIGTA CMD. Two required items were reported incorrectly in one FY 2000 semiannual report and five items not required to be reported were overstated in two FY 2000 semiannual reports.

The following chart summarizes the § 1203 information reported in the FY 2000 TIGTA Semiannual Reports to the Congress. The information on terminations and mitigated cases is required by the RRA 98; the other information is not required, but represents the actions taken on the § 1203 allegations received by the TIGTA.

## Reported Versus Actual § 1203 Information

|  | Reported | Actual | Overstated/ (Understated) |
|---|---|---|---|
| **April FY 2000 Semiannual Report** |  |  |  |
| Information Required By RRA 98: |  |  |  |
| Terminations | 11 | 11 | 0 |
| Mitigated Cases | 0 | 0 | 0 |
| Other General Information: |  |  |  |
| § 1203 Allegations Received | 369 | 369 | 0 |
| § 1203 Investigations Initiated | 89 | 78 | 11 |
| Open § 1203 Investigations | 65 | 56 | 9 |

*EXHIBIT E*

| | | | |
|---|---|---|---|
| Closed § 1203 Investigations | 24 | 22 | 2 |
| § 1203 Complaints Referred to the IRS | 213 | 199 | 14 |

**October FY 2000 Semiannual Report**

Information Required By RRA 98:

| | | | |
|---|---|---|---|
| Terminations | 15 | 17 | (2) |
| Mitigated Cases | 1 | 2 | (1) |

Other General Information:

| | | | |
|---|---|---|---|
| § 1203 Allegations Received | 257 | 251 | 6 |
| § 1203 Investigations Initiated | 164 | 164 | 0 |
| Open § 1203 Investigations | 132 | 132 | 0 |
| Closed § 1203 Investigations | 32 | 32 | 0 |
| § 1203 Complaints Referred to the IRS | 108 | 108 | 0 |

*Source: FY 2000 TIGTA Semiannual Reports to the Congress, TIGTA's IMIS database, and documentation from the CCPAG.*

## The numbers of § 1203 terminations and mitigated cases were not always accurately reported by the IRS

We identified all § 1203 cases evaluated by the Commissioner's § 1203 Review Board during FY 2000 and compared the final disciplinary actions recommended by the Review Board (termination or mitigation) with CCPAG Outreach and Policy Support information and with the ALERTS computer data to determine the accuracy of the number of terminations and mitigated cases reported in the FY 2000 TIGTA Semiannual Reports to the Congress. The IRS is responsible for accurately reporting the number of terminations and mitigated cases to the TIGTA for inclusion in the TIGTA Semiannual Report to the Congress.

Based upon incorrect information provided by the IRS, the TIGTA reported 15 terminations and 1 mitigated case in its Semiannual Report to the Congress for the 6-month period ending September 30,

*EXHIBIT E*

2000. However, there were actually 17 terminations and 2 mitigated cases recorded on the IRS computer systems for this period. I.R.C. § 7803(d)(1)(E) (Supp. IV 1998) requires the TIGTA to annually report to the Congress all terminations or mitigated cases under RRA 98 § 1203.

The IRS tracks all personnel actions on the ALERTS; however, at the time the data was gathered for the semiannual report, the CCPAG Outreach and Policy Support staff did not have direct access to the ALERTS. Instead, the CCPAG staff relied on a "data call" to determine the total number of terminations and mitigated cases to report to the TIGTA Office of Investigations, but did not have access to the computer data to ensure that the numbers were correct and complete. In January 2001, the CCPAG Outreach and Policy Support function was given direct access to this computer data and became solely responsible for tracking the number of terminations and mitigated cases under § 1203. This should prevent the problem from recurring.

### General § 1203 information was not always accurately reported by the Office of Investigations

In addition to reporting the required information on terminations and mitigated cases under § 1203 in its Semiannual Report to the Congress, the TIGTA Office of Investigations also includes general § 1203 information, such as the number of § 1203 allegations received by the TIGTA and the number of § 1203 investigations initiated.

However, five § 1203 items not required to be reported were overstated in two FY 2000 TIGTA Semiannual Reports to the Congress. These overstatements could have been prevented if the § 1203 information had been independently verified prior to issuance of the semiannual reports, in accordance with internal guidelines.

For example, for the 6-month period ending

March 30, 2000, the number of § 1203 investigations initiated was overstated by 11 and the number of § 1203 complaints referred to the IRS was overstated by 14. The inaccuracies for this reporting period occurred because the TIGTA CMD staff who consolidated the § 1203 information did not always use the correct criteria in their calculations.

For the 6-month period ending September 30, 2000, the TIGTA overstated the number of § 1203 allegations received by six. This overstatement occurred because the CMD staff calculated the number of § 1203 allegations received for the entire fiscal year and then subtracted the number of § 1203 allegations reported in the previous 6-month period. This methodology should have worked; however, the § 1203 violation code had been changed for several of the § 1203 allegations reported in the previous 6-month period.

### Reported information did not include the results of all § 1203 complaints

The type of information on § 1203 complaints presented in the TIGTA Semiannual Report to the

**EXHIBIT E**

Congress complies with the RRA 98 requirements. In addition, the TIGTA Office of Investigations includes general § 1203 information that is not required by the law.

We identified several other types of information that might be useful in presenting a more complete picture of the results of § 1203 complaints, such as the number of:

- Employees under investigation who chose to resign or retire in lieu of termination under § 1203.
- Employees whose removal (termination) during their probationary period was due to a § 1203 violation.
- Employees whose charge of § 1203 misconduct, and subsequent termination, was reversed through an appeal.
- Section 1203 complaints received and investigated within the IRS that do not require TIGTA investigation.

Although this information is not required, it would provide a more complete picture of actions resulting from § 1203 complaints. For example, from July 22, 1998, (the date the RRA 98 was enacted) through March 31, 2001, there were 41 terminations under § 1203. However, there were 93 additional employees during this same period that resigned or retired after § 1203 administrative procedures were initiated. The 93 resignations or retirements were not reported in any TIGTA Semiannual Report to the Congress.

## Recommendations

4. TIGTA CMD management should ensure that the general § 1203 information is verified before it is included in the TIGTA Semiannual Report to the Congress.

    Management's Response: Standard criteria have been developed to extract § 1203 information. In addition, an independent review of the information will be conducted prior to its release.

5. The TIGTA Office of Investigations should consider reporting in the Semiannual Report to the Congress the number of employees who retire or resign in lieu of termination under § 1203, the number of employees who are removed during their probationary period due to a § 1203 violation, the number of employees whose charge of § 1203 misconduct (and subsequent termination) is reversed through an appeal, and the number of § 1203 complaints received and investigated within the IRS that do not require TIGTA investigation.

Until the number of § 1203 complaints received and investigated within the IRS (not requiring TIGTA investigation) can be included in the semiannual report, TIGTA Office of Investigations management should clarify that the § 1203 numbers reported in the TIGTA Semiannual Report to the Congress do not depict the results of all § 1203 violations.

Management's Response: TIGTA Office of Investigations management will consider reporting this information in future Semiannual Reports.

**EXHIBIT E**

# **Conclusion**

The IRS and the TIGTA Office of Investigations can better ensure that RRA 98 § 1203 complaint information is properly controlled and accurately reported in the TIGTA Semiannual Report to the Congress. Due to the sensitivity of § 1203 complaints, improvements should be made to ensure that § 1203 complaints are properly controlled when transferred between offices, that complaint information on computer databases is current, and that § 1203 information is verified before being included in the TIGTA Semiannual Report to the Congress.

**Appendix I**

## Detailed Objectives, Scope, and Methodology

The overall objectives of this audit were to determine if Internal Revenue Service (IRS) Restructuring and Reform Act of 1998 (RRA 98) Section (§) 1203 complaints were properly controlled by the IRS and the Treasury Inspector General for Tax Administration (TIGTA) and if RRA 98 § 1203 complaint information was accurately reported in the TIGTA Semiannual Report to the Congress. We performed the following work:

I. Determined if § 1203 complaints were properly controlled by the IRS and the TIGTA Office of Investigations.
   A. Interviewed IRS Commissioner's Complaint Processing and Analysis Group (CCPAG) personnel to determine how complaints are received, controlled, and tracked. Performed a walk-through of the CCPAG and prepared a flowchart of the process.
   B. Interviewed TIGTA Complaint Management Division (CMD) personnel to determine how complaints are received, controlled, and tracked. Performed a walk-through of the CMD and prepared a flowchart of the process.
   C. Obtained an extract of the TIGTA Investigations Management Information System (IMIS) as of September 30, 2000, and requested all § 1203 records from the IRS' Automated Labor and Employee Relations Tracking System (ALERTS) and the Executive Correspondence Management System (ECMS) as of September 30, 2000. Identified 211 § 1203 complaints on the IMIS in the status "referred to the IRS" and 36 § 1203 complaints on the ALERTS or the ECMS in the status "referred to the TIGTA" as of September 30, 2000.
   D. Identified 321 open § 1203 complaints on the IMIS and 645 open § 1203 complaints on the ALERTS or the ECMS that were in a "non-referred" status as of September 30, 2000.
   E. Selected a statistically valid sample of 70 open § 1203 complaints from the population identified in Step I.C. that were referred either from the IRS to the TIGTA Office of Investigations (10 complaints) or from the TIGTA Office of Investigations to the IRS (60 complaints). Located the complaints and obtained copies of the complaint history documentation. Based the sample selection criteria on the following criteria:

*EXHIBIT E*

| Referred | Total | IMIS | ALERTS | ECMS |
|---|---|---|---|---|
| Population | 247 | 211 | 12 | 24 |
| Precision | 10 % | | | |
| Error Rate | 50% | | | |
| Confidence Level | 95% | | | |
| Sample Size | 70 | 60 | 3 | 7 |

Our precision and error rates were larger in the referred sample than in the non-referred sample (Step I.F.) because, in our opinion, complaints transferred between offices had a higher risk of not being controlled than complaints that were not transferred. We used an expected error rate of 50 percent to provide the largest potential sample. We used a 10 percent precision rate because if we found uncontrolled complaints, the precision of the sample would be immaterial.

F. Selected a statistically valid sample of 103 open § 1203 complaints from the population identified in Step I.D. that were in a "non-referred" status on the IRS systems (69 complaints) or the TIGTA system (34 complaints). Located the complaints and obtained copies of the complaint history documentation. Based the sample selection criteria on the following criteria:

| Non-referred | Total | IMIS | ALERTS | ECMS |
|---|---|---|---|---|
| Population | 966 | 321 | 418 | 227 |
| Precision | 4% | | | |
| Error Rate | 5% | | | |
| Confidence Level | 95% | | | |
| Sample Size | 103 | 34 | 45 | 24 |

II. Determined if § 1203 complaint information was accurately reported in the Fiscal Year (FY) 2000 TIGTA Semiannual Reports to the Congress.

A. Interviewed appropriate CCPAG and CMD personnel to determine:
   1. The process for compiling and reporting the required information on terminations

**EXHIBIT E**

or mitigated cases under § 1203.

    2. The process for compiling and reporting information regarding TIGTA § 1203 complaint investigations.

B. Identified all § 1203 cases reviewed by the Commissioner's 1203 Review Board for FY 2000 and determined if the disciplinary actions (termination or mitigation) taken on these cases were reflected in the respective TIGTA Semiannual Report to the Congress.

C. Determined the accuracy of the general § 1203 information reported in the FY 2000 TIGTA Semiannual Reports to the Congress.

D. Identified all complaints that were coded as § 1203 on the March 2000 IMIS database but were not coded as § 1203 on the September 2000 IMIS database.

**Appendix II**

## **Major Contributors to This Report**

Maurice S. Moody, Assistant Inspector General for Audit (Headquarters Operations and Exempt Organizations Programs)

Nancy A. Nakamura, Director

Gerald T. Hawkins, Audit Manager

Catherine E. Cloudt, Senior Auditor

Nelva U. Blassingame, Auditor

Yolanda D. Brown, Auditor

Andrew J. Burns, Auditor

**Appendix III**

## **Report Distribution List**

Commissioner N:C

Assistant Deputy Commissioner N:ADC

Chief, Agency-Wide Shared Services A

Commissioner, Large and Mid-Size Business Division LM

*EXHIBIT E*

Commissioner, Small Business/Self-Employed Division S

Commissioner, Tax Exempt and Government Entities Division T

Commissioner, Wage and Investment Division W

Chief Counsel CC

Director, Legislative Affairs CL:LA

Director, Office of Program Evaluation and Risk Analysis N:ADC:R:O

National Taxpayer Advocate TA

Office of Management Controls N:CFO:F:M

Audit Liaisons:

Commissioner's Complaint Processing & Analysis Group N:ADC:C

Chief, Agency-Wide Shared Services A:W

**Appendix IV**

Outcome Measures

This appendix presents detailed information on the measurable impact that our recommended corrective actions will have on tax administration. These benefits will be incorporated into our Semiannual Report to the Congress.

Type and Value of Outcome Measure:

- Reliability of Information:

    Actual – 28 allegations for which computer information was not consistent (see page 7).

    Potential – 38 complaints (± 1.93 percent) where casework may not have been completed and another 125 complaints (± 4.23 percent) where the computer databases may not contain current information (see page 7).

*EXHIBIT E*

Methodology Used to Measure the Reported Benefit:

**Actual -** We compared the March 2000 Treasury Inspector General for Tax Administration (TIGTA) Investigations Management Information System (IMIS) to the September 2000 TIGTA IMIS and identified 28 allegations that were coded as Section (§) 1203 violations in March, but were no longer coded as § 1203 violations in September. The § 1203 violation code had been removed from the system for these 28 allegations.

**Potential -** We obtained an extract of the TIGTA IMIS and requested all § 1203 records from the Internal Revenue Service's (IRS) Automated Labor and Employee Relations Tracking System and the Executive Correspondence Management System as of September 30, 2000. From these data extracts, we identified 1,213 open § 1203 complaints on the IRS and TIGTA databases as of September 30, 2000. We stratified the § 1203 complaint population into two sub-populations: complaints that were in a referred status and complaints that were not in a referred status.

We randomly selected a statistically valid sample of 173 complaints from the 2 sub-populations. Details of our methodology are presented in Appendix I. The following chart summarizes the population sizes, sample sizes, and the numbers of exceptions (errors) found in each sample.

| Sub-population | Population Size | Sample Size | Exceptions | |
| | | | Complaints that Could Not Be Located | Complaints with Incorrect Status |
|---|---|---|---|---|
| Referred complaints | 247 | 70 | 8 | 14 |
| Non-referred complaints | 966 | 103 | 1 | 8 |
| Totals | 1,213 | 173 | 9 | 22 |

To proportionately weight the results from each sample, we divided each sub-population of complaints (referred and non-referred) by the total population of complaints, as follows.

247 referred complaints / 1,213 total complaints = 0.2036

966 non-referred complaints / 1,213 total complaints = 0.7964

For each exception category (complaints that could not be located and complaints with incorrect status), we calculated the estimated percent of error in the total population, as follows:

*EXHIBIT E*

## Complaints that could not be located

- Calculated the error rate within each sub-population by dividing the number of complaints that could not be located in each sample by the total number of complaints in that sample.

  8 complaints could not be located / 70 referred complaints sampled = 0.1143

  1 complaint could not be located / 103 non-referred complaints sampled = 0.0097

- Multiplied the error rate from each sub-population by its weighted proportion to the total population and added the results.

  $(0.2036 * 0.1143) + (0.7964 * 0.0097) = 0.0310034726$

  $0.0310034726 = 3.1$ percent error in total population

- Multiplied the total population by the percent of error.

  $1,213 * 3.1$ percent = 38 complaints that could not be located.

  <u>Lower and Upper Limits</u>

- Calculated the lower limit of the error rate.

  $0.0310034726 - NORMSINV(0.975)*SQRT((1/1213)^2*(247^2*((247-70)/247)*$

  $((8/70)*(62/70)/69)+966^2*((966-103)/966)*((1/103)*(102/103)/102))) = 0.0117004877$

- Calculated the upper limit of the error rate.

  $0.0310034726 + NORMSINV(0.975)*SQRT((1/1213)^2*(247^2*((247-70)/247)*$

  $((8/70)*(62/70)/69)+966^2*((966-103)/966)*((1/103)*(102/103)/102))) = 0.0503064574$

- Calculated the difference between the error rate in the total population and the lower and upper limits of error.

  Lower limit: $0.0117004877 - 0.0310034726 = -0.0193029848$ (negative 1.93 percent)

  Upper limit: $0.0503064574 - 0.0310034726 = 0.0193029848$ (positive 1.93 percent)

**EXHIBIT E**

## Complaints with incorrect status

- Calculated the error rate within each sub-population by dividing the number of instances where the computer databases did not contain current information in each sample by the total number of complaints in that sample.

  14 complaints with incorrect status / 70 referred complaints sampled = 0.2000

  8 complaints with incorrect status / 103 non-referred complaints sampled = 0.0777

- Multiplied the error rate from each sub-population by its weighted proportion to the total population and added the results.

  (0.2036 * 0.2000) + (0.7964 * 0.0777) = 0.1025796589

  0.1025796589 = 10.26 percent error in total population

- Multiplied the total population by the percent of error.

  1,213 * 10.26 percent = 125 complaints where the computer databases may not contain current information.

  Lower and Upper Limits

- Calculated the lower limit of the error rate.

  0.1025796589–NORMSINV(0.975)*SQRT((1/1213)^2*(247^2*((247-70)/247)*

  ((14/70)*(56/70)/69)+966^2*((966-103)/966)*((8/103)*(95/103)/102))) = 0.0602323072

- Calculated the upper limit of the error rate.

  0.1025796589+NORMSINV(0.975)*SQRT((1/1213)^2*(247^2*((247-70)/247)*

  ((14/70)*(56/70)/69)+966^2*((966-103)/966)*((8/103)*(95/103)/102))) = 0.1449270105

- Calculated the difference between the error rate in the total population and the lower and upper limits of error.

  Lower limit: 0.0602323072 – 0.1025796589 = -0.0423473517 (negative 4.23 percent)

### *EXHIBIT E*

Upper limit: 0.1449270105 − 0.1025796589 = 0.0423473517 (positive 4.23 percent)

**Appendix V**

Internal Revenue Service Restructuring and Reform Act of 1998 Section 1203 Provisions Requiring Termination of Employment

The Internal Revenue Service (IRS) must terminate the employment of an IRS employee (absent direct intervention by the IRS Commissioner) if there is a final administrative or judicial determination that, in the course of his or her official duties, the employee committed one of the following provisions:

> **§ 1203(b)(1)** Willful failure to obtain the required approval signatures on documents authorizing the seizure of a taxpayer's home, personal belongings, or business assets.
>
> **§ 1203(b)(2)** Providing false statements under oath with respect to a material matter involving a taxpayer or taxpayer representative.
>
> **§ 1203(b)(3)** With respect to a taxpayer, taxpayer representative, or other employee of the IRS, the violation of:

A. Any right under the Constitution of the United States; or
B. Any civil right established under:
   i. Title VI or VII of the Civil Rights Act of 1964,
   ii. Title IX of the Education Amendments of 1972,
   iii. The Age Discrimination in Employment Act of 1967,
   iv. The Age Discrimination Act of 1975,
   v. Section 501 or 504 of the Rehabilitation Act of 1973, or
   vi. Title I of the Americans with Disabilities Act of 1990.

> **§ 1203(b)(4)** Falsifying or destroying documents to conceal mistakes made by any employee with respect to a matter involving a taxpayer or taxpayer representative.
>
> **§ 1203(b)(5)** Assault or battery on a taxpayer, taxpayer representative, or other employee of the IRS, but only if there is a criminal conviction, or a final adverse judgment by a court in a civil case, with respect to the assault or battery.
>
> **§ 1203(b)(6)** Violations of the Internal Revenue Code (I.R.C.) of 1986, Department of Treasury regulations, or policies of the IRS

*EXHIBIT E*

(including the Internal Revenue Manual) for the purpose of retaliating against, or harassing, a taxpayer, taxpayer representative, or other employee of the IRS.

**§ 1203(b)(7)** Willful misuse of the provisions of § 6103 of the I.R.C. of 1986 for the purpose of concealing information from a Congressional inquiry.

**§ 1203(b)(8)** Willful failure to file any tax return required under the I. R.C. of 1986 on or before the date prescribed therefore (including any extensions), unless such failure is due to reasonable cause and not to willful neglect.

**§ 1203(b)(9)** Willful understatement of Federal tax liability, unless such understatement is due to reasonable cause and not willful neglect.

**§ 1203(b)(10)** Threatening to audit a taxpayer for the purpose of extracting personal gain or benefit.

**Appendix VI**

## Internal Revenue Service Commissioner's Complaint Processing & Analysis Group's Response to the Draft Report

The response was removed due to its size. To see the response, please go to the Adobe PDF version of the report on the TIGTA Public Web Page.

**Appendix VII**

# Treasury Inspector General for Tax Administration Office of Investigations' Response to the Draft Report

The response was removed due to its size. To see the complete response, please go to the Adobe PDF version of the report on the TIGTA Public Web Page.

*EXHIBIT E*

# · Management Advisory Report: No Violations of the Fair Debt Collection Practices Act Resulted in Administrative or Civil Actions (Fiscal Year 2001)

## July 2001

## Reference Number: 2001-10-081

**This report has cleared the Treasury Inspector General for Tax Administration disclosure review process and information determined to be restricted from public release has been redacted from this document.**

July 24, 2001

MEMORANDUM FOR DEPUTY COMMISSIONER CHIEF COUNSEL

FROM: Pamela J. Gardiner /s/ Pamela J. Gardiner

Deputy Inspector General for Audit

SUBJECT: Final Management Advisory Report - No Violations of the Fair Debt Collection Practices Act Resulted in Administrative or Civil Actions (Fiscal Year 2001)

This report presents the results of our Fiscal Year 2001 Fair Debt Collection Practices Act (FDCPA) review. In summary, we found no violations of the FDCPA reported by Internal Revenue Service (IRS) management that resulted in an administrative action against an employee. Additionally, there were no civil actions that resulted in the IRS paying monetary settlements to taxpayers because of an FDCPA violation.

IRS management agreed with the observations in the draft report. The full text of their comments is included as an appendix.

Copies of this report are also being sent to the IRS managers who are affected by the report. Please contact me at (202) 622-6510 if you have any questions or Maurice S. Moody, Assistant Inspector General for Audit (Headquarters Operations and Exempt Organizations Programs), at (202) 622-8500.

*EXHIBIT F*

**FILED**

06 1364    AUG − 1 2006

**NANCY MAYER WHITTINGTON, CLERK**
**U.S. DISTRICT COURT**

# Table of Contents

Executive Summary

Objective and Scope

Background

Results

      No Fair Debt Collection Practices Act Violations Resulted in Administrative Action

      No Civil Actions Coded as Fair Debt Collection Practices Act Violations Were Closed During Our Audit Period

Conclusion

Appendix I – Detailed Objective, Scope, and Methodology

Appendix II – Major Contributors to This Report

Appendix III – Report Distribution List

Appendix IV – Management's Response to the Draft Report

## Executive Summary

The Fair Debt Collection Practices Act (FDCPA) includes provisions that restrict various collection abuses and harassment in the private sector that did not apply to the United States (U.S.) Government at the time the FDCPA was enacted. However, the Internal Revenue Service (IRS) Restructuring and Reform Act of 1998 (RRA 98) requires the IRS to comply with certain provisions of the FDCPA and to be at least as considerate to taxpayers as private creditors are required to be with their customers. In addition, taxpayers who believe their FDCPA rights were violated can file a civil action against the U.S. Government under the Civil Damages for Certain Unauthorized Collection Actions statute.

Section 1102 (d)(1)(G) of the RRA 98 requires the Treasury Inspector General for Tax Administration (TIGTA) to include in one of its semiannual reports to the Congress information regarding any administrative or civil actions related to FDCPA violations. The semiannual report must provide a summary of such taxpayer actions and include any judgments or awards granted. Accordingly, the

*EXHIBIT F*

objective of this review was to obtain information on IRS administrative and civil actions resulting from violations of the FDCPA by IRS employees. The TIGTA reviewed cases coded as FDCPA violations on IRS computer systems opened after July 22, 1998, and closed during the period April 1 through December 31, 2000.

## Results

Based on a review of information coded as potential FDCPA violations on the IRS' computer systems, there were no violations that resulted in the IRS taking an administrative action against an employee. In addition, the IRS did not have any closed civil actions involving FDCPA violations. Accordingly, the IRS did not pay any money to taxpayers for civil actions resulting from FDCPA violations.

### No Fair Debt Collection Practices Act Violations Resulted in Administrative Action

To determine if any FDCPA violations resulted in an administrative action, the TIGTA reviewed cases coded as FDCPA violations on the Automated Labor and Employee Relations Tracking System. Review of all 28 cases coded as FDCPA during the audit period did not identify any FDCPA violations that resulted in an administrative action being taken against an IRS employee. These 28 cases were either miscoded as FDCPA violations (19) or closed without administrative action (9).

### No Civil Actions Coded as Fair Debt Collection Practices Act Violations Were Closed During Our Audit Period

Civil actions filed by taxpayers against the IRS are input to the Counsel Automated System Environment (CASE) for tracking. During the audit period, the CASE did not contain any closed civil actions coded as FDCPA. As a result, the IRS did not pay any money to taxpayers for civil actions resulting from FDCPA violations during the period of this review.

Case information from the Department of Justice's (DOJ) Tax Division was obtained to better ensure civil actions involving FDCPA violations were captured on the CASE. Because the DOJ does not track FDCPA violations separately, the TIGTA reviewed the cases filed under Civil Damages for Certain Unauthorized Collection Actions, which allows taxpayers to sue the IRS for violations of the Internal Revenue Code related to collection actions. Seven cases were opened on or after July 22, 1998, and closed during the period April 1 through December 31, 2000. None of the seven cases involved FDCPA violations.

Management's Response: IRS management agreed with the observations in the draft report. Management's complete response to the draft report is included as Appendix IV.

## Objective and Scope

*EXHIBIT F*

The objective of this review was to obtain information on Internal Revenue Service (IRS) administrative and civil actions resulting from violations of the Fair Debt Collection Practices Act (FDCPA) by IRS employees. Fieldwork was performed in the Strategic Human Resources, Agency-Wide Shared Services, and Chief Counsel functions in the National Headquarters during the period February to March 2001. This review was performed in accordance with the President's Council on Integrity and Efficiency's *Quality Standards for Inspections*.

For this Fiscal Year (FY) 2001 review, closed cases from the Automated Labor and Employee Relations Tracking System (ALERTS) and the Counsel Automated System Environment (CASE) were analyzed to identify violations of the FDCPA. However, the Treasury Inspector General for Tax Administration (TIGTA) cannot ensure that cases recorded on the ALERTS encompass all potential FDCPA violations. As stated in a FY 2000 report on the FDCPA, data captured on the ALERTS related to potential FDCPA violations may not be complete and accurate. During this FY 2001 review, the TIGTA did not determine the accuracy or consistency of disciplinary actions taken against employees for potential FDCPA violations.

Details of our objective, scope, and methodology are presented in Appendix I. Major contributors to this report are listed in Appendix II.

## **Background**

Section 1102 (d)(1)(G) of the IRS Restructuring and Reform Act of 1998 (RRA 98) requires the TIGTA to include in one of its semiannual reports to the Congress information regarding any administrative or civil actions related to FDCPA violations. The semiannual report must provide a summary of such taxpayer actions and include any judgments or awards granted.

The IRS' definition of administrative action includes disciplinary actions ranging from admonishment through removal. Lesser actions, such as oral or written counseling, are not considered administrative actions. The IRS' definition of administrative actions was used when determining the number of FDCPA violations to be reported to the Congress.

The FDCPA includes provisions that restrict various collection abuses and harassment in the private sector that did not apply to the federal government at the time the FDCPA was enacted. The RRA 98 requires the IRS to comply with certain provisions of the FDCPA and to be at least as considerate to taxpayers as private creditors are required to be with their customers. Specifically, the IRS may not communicate with taxpayers in connection with the collection of any unpaid tax:

- At unusual or inconvenient times.
- If the IRS knows that the taxpayer has obtained representation from a person authorized to practice before the IRS, and the IRS knows or can easily obtain the representative's name and address.
- At the taxpayer's place of employment, if the IRS knows or has reason to know that such

*EXHIBIT F*

communication is prohibited.

Further, the IRS may not harass, oppress, or abuse any person in connection with any tax collection activity or engage in any activity that would naturally lead to harassment, oppression, or abuse. Such conduct specifically includes (but is not limited to) the use or threat of violence or harm, use of obscene or profane language, causing a telephone to ring continuously with harassing intent, and the placement of telephone calls without meaningful disclosure of the caller's identity.

If taxpayers believe the IRS has violated their FDCPA rights, they may file an administrative claim for damages with the applicable IRS executive for the location where the taxpayer resides or file for civil damages in a federal district court.

Taxpayer complaints about IRS employees' conduct can be reported to several IRS functions for tracking on management information systems. If a taxpayer files a civil action or if IRS management determines that the taxpayer's FDCPA rights were potentially violated, the complaint could be referred and tracked on one or both of the following IRS systems:

- Office of Workforce Relations' ALERTS, which generally tracks employee behavior that may warrant IRS management administrative actions.
- Chief Counsel's CASE, which is an inventory control system that tracks items such as taxpayer civil actions or bankruptcies.

The IRS implemented FDCPA codes on the ALERTS in March 1999 and on the CASE in June 1999.

## Results

Based upon a review of information coded as potential FDCPA violations on the IRS' computer systems, there were no violations that resulted in the IRS taking an administrative action against an employee for the period April 1 through December 31, 2000. In addition, the IRS did not have any closed civil actions involving FDCPA violations for this period. Accordingly, the IRS did not pay any money to taxpayers for civil actions resulting from FDCPA violations.

### No Fair Debt Collection Practices Act Violations Resulted in Administrative Action

IRS managers investigate a taxpayer complaint against an employee and coordinate with the local Labor Relations office to determine the appropriate level of disciplinary action. If the misconduct requires an administrative action, managers refer the complaint to the local Labor Relations office, which tracks it on the ALERTS. The following categories were established on the ALERTS to track potential FDCPA violations:

   o Contact with a taxpayer at an unusual location or time.

*EXHIBIT F*

- o Direct contact with a taxpayer without the consent of the taxpayer's representative.
- o Contact with a taxpayer at his or her place of employment when prohibited.
- o Conduct which is intended to harass or abuse a taxpayer.
- o Use of obscene or profane language toward a taxpayer.
- o Continuous telephone calls to a taxpayer with the intent to harass.
- o Telephone calls to a taxpayer without meaningful disclosure of the employee's identity.

To determine if any FDCPA violations resulted in an administrative action, the TIGTA reviewed cases from the ALERTS coded as potential FDCPA violations that were opened after July 22, 1998, and closed during the period April 1 through December 31, 2000. Review of all 28 cases coded as FDCPA violations did not identify any FDCPA violations that resulted in an administrative action being taken against an employee.

Nineteen of the 28 cases reviewed from the ALERTS were incorrectly coded as FDCPA violations. The other nine cases were closed without administrative action. The TIGTA previously identified miscoding of FDCPA cases on the ALERTS and made a recommendation to address this issue in a FY 2000 report on the FDCPA. IRS management agreed to take corrective actions to better ensure FDCPA violations are properly identified and reported.

## No Civil Actions Coded as Fair Debt Collection Practices Act Violations Were Closed During Our Audit Period

Civil actions filed by taxpayers against the IRS are input to the CASE database by District Counsel, who are responsible for coding the case with the appropriate category code.

For cases opened after July 22, 1998, and closed during the period April 1 through December 31, 2000, the CASE did not include any closed civil actions coded as FDCPA. Accordingly, the IRS did not pay any money to taxpayers for civil actions resulting from FDCPA violations during the period of this review.

Case information from the Department of Justice's (DOJ) Tax Division was obtained to better ensure civil actions involving FDCPA violations were captured on the CASE. Because the DOJ does not track FDCPA violations separately, the TIGTA reviewed the cases filed under Civil Damages for Certain Unauthorized Collection Actions, which allows taxpayers to sue the IRS for violations of the Internal Revenue Code related to collection actions. Seven cases were initiated on or after July 22, 1998, and closed during the period April 1 through December 31, 2000. None of the seven cases involved FDCPA violations.

Management's Response: IRS management in the Office of the Chief Counsel and the Workforce Relations Division in Strategic Human Resources considered the report to be accurate and complete and were in agreement with its findings.

*EXHIBIT F*

# Conclusion

Based upon a review of information coded as potential FDCPA violations on the IRS' computer systems, there were no violations that resulted in the IRS taking an administrative action against an employee for the period April 1 through December 31, 2000. In addition, the IRS did not have any closed civil actions involving FDCPA violations for this period. Accordingly, the IRS did not pay any money to taxpayers for civil actions resulting from FDCPA violations.

**Appendix I**

## Detailed Objective, Scope, and Methodology

The objective of this review was to obtain information on Internal Revenue Service (IRS) administrative and civil actions resulting from violations of the Fair Debt Collection Practices Act (FDCPA) by IRS employees. Specifically, we:

I. Determined the number of FDCPA violations resulting in administrative actions.
   A. Obtained a computer extract from the Automated Labor and Employee Relations Tracking System (ALERTS) of 28 cases that were opened after July 22, 1998, and closed during the period April 1 through December 31, 2000, coded as FDCPA violations.
      1. Analyzed available ALERTS information to ensure the cases were accurately coded as FDCPA violations.
      2. Obtained additional case file information from the local Labor Relations offices to determine if cases were coded accurately as FDCPA violations.
   B. Determined if any cases involving FDCPA violations resulted in an administrative action.
      1. Reviewed the final disposition code for the cases involving FDCPA violations.
      2. Determined if any cases resulted in a minimum disciplinary action of admonishment.
      3. Reviewed case file information from the local Labor Relations offices, if necessary, to determine if the violations occurred after July 22, 1998.
II. Determined if there were any IRS civil actions (judgments and awards granted) resulting from violations of the FDCPA.
   A. Requested a computer extract from the Counsel Automated System Environment (CASE) for Subcategory 511 (established to track FDCPA violations) cases opened after July 22, 1998, and closed during the period April 1 through December 31, 2000. (Note: No cases met our criteria for review.)
   B. Requested copies from the Department of Justice's Tax Division of any complaints opened on or after July 22, 1998, involving any Internal Revenue Code § 7433 civil action and closed during the period April 1 through December 31, 2000.

**Appendix II**

*EXHIBIT F*

200110081fr2

## Major Contributors to This Report

Maurice S. Moody, Assistant Inspector General for Audit (Headquarters Operations and Exempt Organizations Programs)

Nancy A. Nakamura, Director

Jeffrey M. Jones, Audit Manager

Mark Judson, Senior Auditor

Margaret A. Anketell, Auditor

**Appendix III**

## Report Distribution List

Commissioner N:C

Chief, Agency-Wide Shared Services A

Associate Chief Counsel (Procedure and Administration) CC:P&A

Director, Office of Workforce Relations N:ADC:H:R

Director, Personnel Services A:PS

Director, Strategic Human Resources N:ADC:H

Chief Counsel CC

Director, Legislative Affairs CL:LA

Director, Office of Program Evaluation and Risk Analysis N:ADC:R:O

National Taxpayer Advocate TA

Office of Management Controls N:CFO:F:M

Audit Liaisons:

*EXHIBIT F*

Chief, Agency-Wide Shared Services A

Chief Counsel CC

Associate Chief Counsel (Procedure and Administration) CC:P&A

Director, Office of Workforce Relations N:ADC:H:R

Director, Strategic Human Resources N:ADC:H

**Appendix IV**

Management's Response to the Draft Report

The response was removed due to its size. To see the response, please go to the Adobe PDF version of the report on the TIGTA Public Web Page.

*EXHIBIT F*

# Improvements Are Needed in the Chief Counsel's Management Information System to Better Protect Taxpayer Privacy and Rights

## May 2000

## Reference Number: 2000-40-071

**This report has cleared the Treasury Inspector General for Tax Administration disclosure review process and information determined to be restricted from public release has been redacted from this document.**

May 23, 2000

MEMORANDUM FOR COMMISSIONER ROSSOTTI

FROM: (for) Pamela J. Gardiner /s/ Margaret E. Begg

Deputy Inspector General for Audit

SUBJECT: Final Audit Report - Improvements Are Needed in the Chief Counsel's Management Information System to Better Protect Taxpayer Privacy and Rights

This report presents the results of our review of the effectiveness of the Internal Revenue Service's (IRS) controls over civil suits against the Government. We focused on civil suits which taxpayers can file involving the IRS. In summary, we found Chief Counsel's management information system adequate to control the inventory of civil cases. However, we believe that the result of the cases and the damage amounts, if any, need to be captured in the Chief Counsel's management information system to allow systemic improvements that could prevent future violations of taxpayer privacy and rights.

06 1364

As a result of this review, we recommend that the results of the cases and the damage amounts, if any, need to be captured in the management information system. In addition, a formal process should be established to refer lost and settled cases to either Treasury

**EXHIBIT G**

FILED

AUG - 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Inspector General for Tax Administration for possible criminal investigation and/or IRS functional management for review of IRS policy and procedures to determine if any changes are necessary to protect taxpayer privacy and rights.

IRS management generally agreed with these recommendations for the need in improvements in Chief Counsel's management information system. Management's comments have been incorporated into the report where appropriate, and the full text of their comments is included as an appendix.

Copies of this report are also being sent to the IRS managers who are affected by the report recommendations. Please contact me at (202) 622-6510 if you have questions, or your staff may call Walter E. Arrison, Associate Inspector General for Audit, (Wage and Investment Income Programs), at (770) 986-5720.

## Table of Contents

Executive Summary

Objective and Scope

Background

Results

       The Chief Counsel's Management Information System Needs to Capture Additional Data Elements

Conclusion

Appendix I – Detailed Objective, Scope, and Methodology

Appendix II – Major Contributors to This Report

Appendix III – Report Distribution List

Appendix IV – Additional Information Regarding Civil Cases

Appendix V – Management's Response to the Draft Report

**EXHIBIT G**

represents the Government for the cases alleging violation of the I.R.C., and the Office of the Chief Counsel is not always informed of the outcome of these cases. When received in the Office of the Chief Counsel, I.R.C. §7431 complaints are forwarded to the Treasury Inspector General for Tax Administration (TIGTA) for research on any open investigation on employees cited in the complaint. However, no further referrals are made to the TIGTA after the cases are closed for possible criminal investigation. The Office of the Chief Counsel also works with IRS management to obtain necessary information to develop a defense strategy. However, no formal process is in place for cases that are lost or settled, to ensure the IRS reviews and makes the appropriate changes to established policies and procedures. We believe the IRS needs to be aware of all outcomes for these cases and damage amounts, if any, need to be captured in the Office of the Chief Counsel's management information system. The lost and settled cases need to be analyzed to determine if systemic improvements are needed to better protect future taxpayer privacy and rights.

## Summary of Recommendations

The IRS Office of the Chief Counsel should obtain from the DOJ all results of civil cases involving IRS employees and capture results in the management information system. The lost and settled cases should be referred to the TIGTA for possible criminal investigation and/or IRS functional management for review of IRS policy and procedures to determine if any systemic changes are necessary to protect taxpayer privacy and rights.

Management's Response: The Chief Counsel will modify the management information system to provide additional fields for entry of information regarding the ultimate outcome in all the various types of cases and adopt formal procedures requiring personnel to request information regarding case outcomes. Further, the Chief Counsel will adopt formal procedures requiring the appropriate IRS functional management to be notified of the outcome of every case.

In addition, Chief Counsel attorneys will notify IRS functional management of Treasury Department standards governing referrals to TIGTA and provide a recommendation, if appropriate.

## Objective and Scope

The overall objective of this review was to determine the effectiveness of the Internal Revenue Service's (IRS) controls over civil suits against the Government. We focused on civil suits which taxpayers can file involving the IRS.

The audit was performed because the Senate Finance Committee had concerns regarding the process of controlling and monitoring these cases. As a result, the Treasury Inspector General for Tax Administration (TIGTA) initiated this review. The audit work was conducted during the period September 1999 through November 1999, at the IRS Chief Counsel offices in Washington, DC. The audit work was performed in accordance with *Government Auditing Standards*.

**EXHIBIT G**

Improvements Are Needed in the Chief Counsel's Management Information System to Better Protect Taxpayer Privacy and Rights

Case 1:06-cv-01364-EGS    Document 1-3    Filed 08/01/2006    Page 35 of 41

Details of our audit objective, scope, and methodology are presented in Appendix I. Major contributors to this report are listed in Appendix II.

## Background

There are several matters in which a taxpayer can file a civil complaint against the IRS. These include violations of the Privacy Act and a Freedom of Information Act appeal. In addition, certain sections of the Internal Revenue Code (I.R.C.) allow taxpayers to file civil complaints for damages against the Government for conduct or lack of conduct on the part of IRS personnel. (See Appendix IV for additional information regarding the types of civil complaints that can be filed involving the IRS.)

The IRS Restructuring and Reform Act of 1998 (RRA 98) placed emphasis on policies and procedures protecting taxpayer privacy and rights. RRA 98 §3802 requires the Joint Committee on Taxation to conduct a study on provisions regarding taxpayer confidentiality. The study is to include an examination of present-law protections of taxpayer privacy.

The Office of the Chief Counsel's responsibility differs depending upon the reason for the complaint. The Office of the Chief Counsel is responsible for presenting and defending the Government's position for Tax Court cases. However, the Department of Justice (DOJ) is responsible for defending the other civil cases involving the IRS, including all actions alleging violation of the I.R.C. For these cases, the Office of the Chief Counsel is responsible only for providing assistance to the DOJ on possible defense strategies.

## Results

The Office of the Chief Counsel uses a fully integrated, nationwide management information system to control and monitor its workload. This system automates the full range of litigation, technical rulings, and administrative management functions of the Office of the Chief Counsel.

Various data elements are captured within the management information system, allowing for case and issue tracking. Additionally, the system is regularly updated to reflect the status of and the amount of time that was charged to the case.

There were approximately 46,000 civil cases closed in the Office of the Chief Counsel's management information system during the period January 1, 1998, through September 30, 1999. We found the IRS Office of the Chief Counsel's management information system adequate to control the inventory of civil cases. However, we believe that additional data elements need to be captured identifying the results of these cases. Trend analyses could be performed allowing the IRS to assess operations to determine if policies and procedures are effectively protecting taxpayer privacy and rights.

## The Chief Counsel's Management Information System Needs to Capture Additional Data

*EXHIBIT G*

## Elements

The Office of the Chief Counsel is not consistently capturing the necessary elements in its management information system to ensure the IRS takes appropriate action to protect future taxpayer rights. The results of the cases and damage amounts, if any, need to be captured to allow the IRS to assess policies and procedures which protect taxpayer confidentiality and ensure equitable treatment of taxpayers.

When a complaint is received by the Office of the Chief Counsel, various data elements are entered into the management information system, including the name of the case, an opening date, and the type of case. When the case is completed, a closed date is entered and the status is changed to closed. In some instances, an explanation of the outcome of the case (i.e., the case was dismissed, won, settled, or lost) is also entered. However, this is not a requirement, nor is it consistently captured.

The Office of the Chief Counsel officials indicated that closed case disposition is not always captured in the management information system because there is no regulation or policy which requires this type of information, and they do not have a use for this data. Additionally, the DOJ represents the Government for the cases alleging violation of the I.R.C., and the Office of the Chief Counsel is not always informed of the outcome of these cases.

I.R.C. §7431, Improper Disclosure of Returns and Return Information, states that a person may sue for civil damages if any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any tax return or tax return information with respect to the taxpayer in violation of any provision of I.R.C. §6103.

When received in the Office of the Chief Counsel, I.R.C. §7431 complaints are forwarded to the TIGTA for research on any open investigations on employees cited in the complaint. However, no further referrals are made to the TIGTA after the cases are closed, for possible criminal investigation.

In cases which are lost or settled, the potential exists that an IRS employee has performed a criminal violation. Therefore, once a case is closed, the lost or settled cases should be referred to the TIGTA for possible investigation.

Additionally, the Office of the Chief Counsel works with IRS management to obtain necessary information to develop a defense strategy. However, no formal process is in place for cases that are lost or settled, to ensure the IRS reviews and makes the appropriate changes to established policies and procedures.

For example, one I.R.C. §7431 complaint against the IRS was settled for improper access to the taxpayer's information and disclosure of the tax return information to a third party. The settlement resulted in the taxpayer receiving over $41,000 for damages and fees. We did not find any indications that this case was subsequently reviewed after it was settled to determine if systemic changes were needed in IRS policies or procedures.

*EXHIBIT G*

Case 1:06-cv-01364-EGS   Document 1-3   Filed 08/01/2006   Page 37 of 41

Improvements Are Needed in the Chief Counsel Management Information System to Better Protect Taxpayer Privacy and Rights

The passing of the RRA 98 placed emphasis on policies and procedures protecting taxpayer privacy and rights. We believe the IRS needs to be aware of all outcomes for civil complaints involving IRS employees. The lost and settled cases would be analyzed to determine the appropriate course of action to prevent future violations of taxpayer privacy and rights.

## Recommendations

1. The Office of the Chief Counsel should obtain all results of civil cases involving IRS employees from the DOJ. The results of all cases should be captured in the Office of the Chief Counsel's management information system to allow for the ready identification of any lost or settled cases.

   Management's Response: The Chief Counsel will modify the management information system to provide additional fields for entry of information regarding the ultimate outcome in all the various types of cases discussed in the report. However, the IRS and the Office of Chief Counsel are in the midst of a massive organizational restructuring as well as a major effort to upgrade our basic technology infrastructure. Computer programming efforts that are directly related to the current tax-filing season, to implementation of new tax laws, and to these major modernization efforts must be given priority over all other projects.

   The Chief Counsel will adopt formal procedures requiring personnel who are responsible for monitoring these cases to request information regarding case outcomes. While this practice has been followed informally in some offices, the Chief Counsel agrees it should be required uniformly.

2. The Office of the Chief Counsel should establish a formal process to refer lost and settled cases either to the TIGTA for criminal investigation and/or IRS functional management for review of IRS policy and procedures to determine if any systemic changes are necessary to protect taxpayer privacy and rights.

Management's Response: The Chief Counsel will adopt formal procedures requiring the appropriate IRS functional management be notified of the outcome of every case of this type including cases that the government wins or settles on a favorable basis as well as those that result in a loss or settlement adverse to the government's position.

In addition, Chief Counsel attorneys will be instructed also to advise management of the Treasury Department standards governing referrals to TIGTA at the time IRS functional management is informed of the results of the case, and provide a recommendation as to whether such a referral is appropriate in light of the outcome of the case.

## Conclusion

**EXHIBIT G**

We found the Office of the Chief Counsel's management information system adequate to control the inventory of civil cases. However, we believe that the results of the cases and the damage amounts, if any, need to be captured in the management information system. Additionally, a formal process should be established to refer lost and settled cases to either TIGTA for possible criminal investigation and/or IRS functional management for review of IRS policy and procedures to determine if any systemic changes are necessary to protect taxpayer privacy and rights.

## Appendix I

Detailed Objective, Scope, and Methodology

The overall objective of this review was to determine the effectiveness of the Internal Revenue Service's (IRS) controls over civil suits against the Government. We focused on civil suits which taxpayers can file involving the IRS. To accomplish our objective, we:

I. Assessed the process for controlling and monitoring settlement cases and identified any lack of controls and/or control weaknesses.

    A. Identified all possible civil cases that could be filed against the Government involving the IRS. Identified approximately 46,000 civil cases closed during the period January 1, 1998, through September 30, 1999.

    B. Identified and reviewed the IRS policies and procedures regarding these cases and determined how settlement cases are processed.

    C. Reviewed seven Internal Revenue Code (I.R.C.) §7431 case files which were included on the Department of Justice's (DOJ) list of settlement cases for the period of January 1, 1998, through August 31, 1999, and determined whether appropriate documentation existed to identify case disposition.

    D. Interviewed Office of the Chief Counsel employees and identified the process used to track and monitor civil cases taxpayers filed involving the IRS.

I. Evaluated the IRS management information system used to control civil cases involving settlements against the IRS for accuracy, completeness, and usefulness.

    A. Reviewed input sheets and documentation regarding database categories for the Office of the Chief Counsel's management information system and determined the type of information that was maintained.

    B. Obtained from the DOJ a report of cases involving settlements for the period January 1,1998, through August 31,1999, and compared to information obtained from the Office of Chief Counsel management information system and determined whether it was complete.

    C. Traced the seven I.R.C. §7431 cases listed on the DOJ's list of settlement cases the IRS case files and determined the accuracy of the IRS records.

**EXHIBIT G**

    D.  Interviewed Office of Chief Counsel employees and determined the process for entering data into the management information system, uses of the system, and the type of information maintained.

## Appendix II

## <u>Major Contributors to This Report</u>

Walter E. Arrison, Associate Inspector General for Audit (Wage and Investment Income Programs)

Michael Phillips, Director

Debbie Gregory, Audit Manager

Patricia Lee, Audit Manager

Kent Johnson, Senior Auditor

Frank Jones, Senior Auditor

John O'Rourke, Senior Auditor

Thomas Dori, Auditor

Bobbie Draudt, Auditor

Peter Stoughton, Auditor

## Appendix III

## <u>Report Distribution List</u>

Deputy Commissioner Operations C:DO

Office of the Chief Counsel CC

Assistant Chief Counsel (Disclosure Litigation) CC:EL:D

Assistant Chief Counsel (General Litigation) CC:EL:GL

***EXHIBIT G***

National Director for Legislative Affairs CL:LA

Office of Management Controls M:CFO:A:M

Director, Office of Program Evaluation and Risk Analysis M:O

Office of the National Taxpayer Advocate C:TA

## Appendix IV

Additional Information Regarding Civil Cases

There are several matters in which a taxpayer can file a civil complaint that involves the Internal Revenue Service (IRS). These include violations of the following:

- o Privacy Act. The Privacy Act not only allows individuals to obtain their own records, it also gives the individual the right to correct, amend, or delete information that is inaccurate, irrelevant, outdated, or incomplete.
- o Freedom of Information Act (FOIA). The FOIA creates procedures whereby any member of the public may obtain the records of the agencies of the Government.
- o Internal Revenue Code (I.R.C.) §7422 (Civil Actions for Refund). A taxpayer can file a suit for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected.
- o I.R.C. §7426 (Civil Actions by Persons Other Than Taxpayers). Persons other than the taxpayer whose property is wrongfully levied upon to satisfy another taxpayer's liability may bring a civil action against the United States.
- o I.R.C. §7431 (Improper Disclosure of Returns and Return Information). A person may sue for civil damages if any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to the taxpayer in violation of any provision of I.R.C. § 6103.
- o I.R.C. §7432 (Civil Damages for Failure to Release Lien). A taxpayer may bring a civil action for damages against the United States if any officer or employee of the IRS knowingly, or by reason of negligence, fails to release a lien under I.R.C. §6325 on property of the taxpayer.
- o I.R.C. §7433 (Civil Damages for Certain Unauthorized Collection Actions). This section permits a taxpayer to recover civil damages arising from an IRS officer's or employee's negligent disregard of any provision of the I.R.C. or the Department of the Treasury regulations in connection with the collection of federal tax from the taxpayer.
- o I.R.C. §7435 (Civil Damages for Unauthorized Enticement of Information Disclosure). A taxpayer may sue for civil damages if any officer or employee of the United States intentionally compromises the determination or collection of any tax due from an attorney, certified public accountant, or enrolled agent representing the taxpayer in exchange for

**EXHIBIT G**

Case 1:06-cv-01364-EGS    Document 1-3    Filed 08/01/2006    Page 41 of 41

Improvements Are Needed in the Chief Counsel Management Information System to Better Protect Taxpayer Privacy and Rights

information conveyed by the taxpayer to the attorney, certified public accountant, or enrolled agent for purposes of obtaining advice concerning the taxpayer's tax liability.

## Appendix V

Management's Response to the Draft Report

The response was removed due to its size. To see the complete response, please see the Adobe PDF version of the report on the TIGTA Public Web Page.

*EXHIBIT G*